**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| **THOMAS F. BROWN** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 6:12-cv-00009** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MICHAEL ASTRUE,** | ) | **By: Hon. Robert S. Ballou** |
| **Commissioner of Social Security,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Thomas Fitzgerald Brown ("Brown") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act") 42 U.S.C. §§ 1381-1383f, 1614(a)(3)(A). Specifically, Brown alleges the Commissioner (1) failed to properly consider new and material evidence which Brown presented to the Social Security Administration's Appeals Council and (2) improperly crafted Brown's residual function capacity.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision, that the Appeals Council properly considered the evidence presented to it, and that the ALJ correctly developed Brown's residual functional capacity. Accordingly, I **RECOMMEND DENYING**

Brown's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 20).

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that he suffers under a "disability" as that term is interpreted under the Act. <u>English v. Shalala</u>, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. <u>See</u> 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings.  Wilkins v. Secretary, Dept. of Health and Human Servs., 953 F.2d 95-96 (4th Cir. 1991).

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).

**Social and Vocational History**

Brown was born March 16, 1962.  R. 41.  He completed high school, took special education classes, and reports that he is limited in his reading ability.  R. 51.  Brown has worked as a lumber stacker, which is classified as unskilled heavy work, and as an automobile mechanic.[2]  R 55.  He stopped working in 1999.  R. 49.  In a function report dated March 5, 2009, Brown described his daily activities as doing errands or doing work in the house.  R. 173.  He further reported that he took care of his children (he reported living with his son), did light cleaning about an hour every other day, shopped for groceries once a week, watched television for several hours daily, talked with others daily, and attended church regularly.  R. 174-79.

**Claim History**

Brown filed his claim for SSI on November 28, 2008.  R. 125.  He initially claimed a disability onset date of September 1, 2003.  R. 125.  The Commissioner denied Brown's application initially and upon reconsideration.  R. 61-65, 69-70.  Administrative Law Judge ("ALJ") Charles Boyer held a hearing on March 5, 2010, at which Brown, represented by counsel, and a vocational expert testified.  R. 36-58.  At the hearing, Brown amended his alleged onset date to January 20, 2009.  R. 38.

The ALJ issued his decision denying Brown's claim on June 7, 2010.  R. 22-30.  The ALJ found that Brown suffered from the severe impairments of cervical degenerative disc disease, status post a C5-C7 cervical decompression and fusion in 2005, hypertension, and myofascial pain, along with a non-severe knee impairment.  R. 24, 25.  The ALJ found that none

---

[2] Work as an automobile mechanic, as customarily performed, is classified as skilled and medium level work.  However, the Vocation Expert noted that Brown's skills had likely been negated by time due to the technological development of automobiles since the claimant had last worked as a mechanic.  R. 55

of these impairments, either individually or in combination, met or medically equal a listed impairment. R. 25. The ALJ further found that Brown has retained an RFC to perform simple, light work. R. 26. The ALJ found that Brown is unable to perform any past relevant work, but that there are jobs, which exist in significant numbers in the national economy, which Brown can perform, given his age, education, work experience, and RFC. R. 28-29. As such, the ALJ concluded that Brown is not disabled. R. 29.

Brown filed an appeal with the Social Security Administration's Appeals Council and included four additional exhibits in his request of review. On December 20, 2011 the Appeals Council denied Brown's request for a review of the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1-4. On August 30, 2011, Brown filed his complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 1).

## III.

### Evidence Submitted to Appeals Council

Brown seeks a remand based upon the recommendation of his neurosurgeon, Dr. William Broaddus, that he is a candidate for a cervical fusion at the C4-5 level. Dr. Broaddus, after seeing Brown only once, stated that Brown had a borad based disc bulge at C4-C5 and that a fusion at that level could provide significant improvement of his symptoms. Brown obtained this opinion following the ALJ's decision and presented it for the first time to the Appeals Council. Brown contends that the opinion is new and material evidence sufficient to warrant a remand. I find that the opinion is neither new nor material and thus does not warrant remand.

Brown's primary medical issue relates to pain resulting from problems with his cervical spine. Brown suffered from cervical stenosis and in 2005 underwent surgical decompression and fusion at C5 through C6 and C7 in 2005. See R. 226, 304, 305, 313-14 (noting Brown's surgical

history).  Brown continued to have neck pain, and in February 2009, he saw Dr. Laura Howard of Central Virginia Community Health Center for neck and lumbar pain.  Dr. Howard prescribed medication for this continued pain.  A CT myleogram on February 13, 2009 revealed that Brown had neuroforaminal narrowing at C3-C4, C4-C5, and C5-C6.  R. 371.

Brown had a cervical MRI on July 30, 2009, which revealed that he had persistent moderate narrowing of the spinal canal at C4-C5 due to a broad-based disc bulge.  R. 349, 369.  Brown saw Dr. John Jane, a neurosurgeon at the University of Virginia, on September 9, 2009, who found that Brown had myelomacial in his spinal cord (softening of the cord).  Dr. Jane noted that he would "at least consider surgery," if Brown had severe nerve compression symptoms in his arm, but only after a trial run of steroid injections.  R. 341, 359.  Throughout the fall of 2009, the University of Virginia Medical Center attempted to contact Brown to discuss his medical condition and to schedule a follow up appointment.  R. 354, 356, 358.[3]  When Brown appeared before the ALJ on March 5, 2010, he had received only conservative treatment—no pain management and no steroid injections.  Based in part on this conservative treatment, the ALJ found that Brown's complaints and asserted impairments from his neck problems were not as severe as claimed.  R.27, 28.

After the hearing before the ALJ, Brown tried on several occasions to have the recommended epidural steroid injections, but these were cancelled each time due to high blood pressure issues.  R. 395, 400, 401, 403.  Brown also had cardiac complications, having been seen in the Cardiovascular Clinic at UVA due to a history of syncope.  R. 397-398.  These intervening events prevented Brown from obtaining the recommended epidural steroid injections.  Then, on

---

[3] It appears that Brown was incarcerated in October, 2009, which may account for some of the difficulty in contacting him during this period.  R. 355.

September 12, 2011, Brown saw Dr. Broaddus, a neurosurgeon at Virginia Commonwealth University.  R. 436-39.  Brown did not see Dr. Broaddus again.

Brown submitted these records, including those of Dr. Broaddus, to Appeals Council. Dr. Broaddus did not make any findings regarding Brown's physical condition that were contradictory to Dr. Jane's, but did find that, given Brown's severe symptoms, he would consider surgery as it could provide significant improvement.  R. 438.  The Appeals Council accepted this new evidence and made it part of the record, but found that it did not provide a basis for changing the ALJ's decision.  R. 2.[4]

Brown argues that Dr. Broaddus's opinion contradicts the ALJ's factual findings that Brown had received only conservative medical treatment for his neck and back pain, and thus the finding that Brown could significantly improve with surgery is new and material evidence which warrants remand.  The Commissioner argues that the opinion of Dr. Broaddus does nothing more than confirm the evidence in the medical record presented to the ALJ.  In particular, the Commissioner notes that Dr. Broaddus did not find that Brown suffered from any medical condition not considered by the ALJ, nor did Dr. Broaddus find that Brown's condition was more severe than the ALJ concluded it to be.

Legal Standard

The regulations permit a claimant to submit "new and material evidence" to the Appeals Council.  Evidence is new if it is not duplicative or cumulative; it is material if there is a

---

[4]The Appeals Council did not elaborate on its reasoning beyond stating that the new evidence provided by Brown did not provide a basis for changing the ALJ's decision.  R. 2.  The Appeals Council is not required to provide any substantive comment or otherwise explain its reasoning. Meyer v. Astrue, 662 F.3d 700, 706 (4th Cir. 2011).  Such an express analysis may well be helpful, but the lack of additional fact finding does not render judicial review of the Commissioner's decision impossible so long as the record provides an adequate explanation for the decision.  Id. (citing DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)).

reasonable possibility it would have changed the outcome of the Commissioner's decision.

Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).  The Appeals Council will consider the additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision."  Id. (citing 20 C.F.R. § 416.1470(b)).  Dr. Broaddus issued his opinion on September 12, 2011.  As his opinion postdates the hearing before the ALJ by well over a year, there would normally be a significant question whether the opinion relates back to the relevant time period.  Here, however, the Commissioner does not dispute that Dr. Broaddus's opinion relates to the relevant period time.  However, I find remand is not appropriate in this case because the evidence is not material as there is not a reasonable possibility it would change the outcome of the Commissioner's decision.

Dr. Broaddus's Opinion

There is no dispute over the substance of Dr. Broaddus opinion.  Brown saw Dr. Broaddus for neck and low back pain.  Dr. Broaddus reviewed Brown's medical records and noted that Brown had previously had an anterior diskectomy and fusion at C5 through C7.  Dr. Broaddus further noted that the medical record showed that other medical issues, primarily Brown's blood pressure and cardiac problems prevented brown from receiving the recommended epidural steroid injections.  R. 436.  Dr. Broaddus observed that Brown complained of significant pain in various locations, but that he provided scarce details about the frequency, intensity, and quality of his pain.  On physical examination, Dr. Broaddus found that Brown had a significant amount of difficulty raising his arms to chest level and keeping them there due to bilateral shoulder pain.  He noted that Brown had to be encouraged to give effort.  A straight leg raise test was negative bilaterally, although Brown complained of increased low back pain with straight

leg raising. R. 437. Brown performed lumbar flexion and extension movements "rather poorly" and complained of increased back pain with movement. R. 437-38. Dr. Broaddus also reviewed an MRI of Brown's cervical spine taken in July 14, 2011. He found broad-based disk bulging at the C4-C5 level just above the fusion at C5-C7. He also noted significant foraminal stenosis on the left at C3-4. Dr. Broaddus diagnosed Brown with significant degenerative disease at the C4-C5 level and concluded that "given [Brown's] severe symptoms, he would be a candidate for extension of the fusion to C4-C5 anteriorly." Dr. Broaddus determined that he would focus on Brown's cervical spine pathology and defer consideration of a workup of Brown's lumbar systems. R. 438.

Brown argues that Dr. Broaddus's opinion is evidence that is contrary to the ALJ's finding that Brown's condition only required conservative treatment and, as such, it is material in that there is a reasonable possibility it would have changed the outcome of the decision. Brown further asserts that because "the only evidence of record concerning the medical records and opinion of Dr. Broaddus, the expert treating neurosurgeon, is contained in the new evidence submitted to the Appeals Council," Pl.'s Supp. Br. 10, the evidence is new. Additionally, Brown argues that because the Appeals Council accepted the new evidence but did not articulate its analysis, no fact finder has made any findings with respect to Dr. Broaddus's opinion, or attempted to reconcile his opinion with the other evidence of record. As such, Brown asserts that the decision in Meyer, 662 F.3d at 707, requires remand for the ALJ to assess Dr. Broaddus's opinion. Pl.'s Supp. Br. 10.

Dr. Broaddus's Opinion is Not "Material" Evidence

Dr. Broaddus did not diagnose Brown as suffering from any latent medical condition that the record before the ALJ failed to identify, or that Brown's condition was any more severe than

the ALJ described.  As such, the Commissioner argues, his opinion is not new in that it is "largely cumulative—essentially a continuation of Plaintiff's treatment for his previously-identified cervical impairment."  Def.'s Br. 8.  For purposes of this report and recommendation, I will assume, without deciding, that Dr. Broaddus's opinion is "new," even though the opinions of Drs. Jane and Broaddus essentially differ only on the timing of surgery, with Dr. Broaddus being willing to forego the epidural steroid injections recommended by Dr. Jane.

New evidence, however, is only material if it creates a reasonable possibility that, upon review of the evidence, the Commissioner would change the *outcome* of his decision—that is, find the claimant disabled and award benefits.  Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).  Remand is not warranted simply because new evidence might change particular elements of the ALJ's decision.  The critical inquiry is whether the conclusion itself could be changed.  The Commissioner notes—and Brown does not dispute—that the objective findings contained in Dr. Broaddus's opinion are not any more severe than those found in the medical record presented to the ALJ.  Dr. Broaddus's diagnostic and clinical findings are largely the same as those of Dr. Jane, the neurosurgeon at the University of Virginia who saw Brown on July 30, 2009.  R. 349-50, 369-70.  Nevertheless, Brown asserts that because Dr. Broaddus found that Brown is a surgical candidate and the ALJ rested his decision on the fact Brown has received only conservative treatment, the opinion of Dr. Broaddus is therefore material evidence warranting remand.

I am bound to review the record as whole, including the new evidence submitted to the Appeal Council, but that review is limited to determining whether substantial evidence supports the ALJ's decision—not to assume the ALJ's role as the fact finder.  Ridings v. Apfel, 76 F.

Supp. 2d 707, 709 (W.D. Va. 1999).  Thus, in both my broader inquiry as to whether the ALJ's

decision is supported by substantial evidence and as to the materiality of the new evidence

inquiry, "my review of the new evidence is limited to determining whether it is contradictory,

presents material competing testimony, or calls into doubt any decision grounded in the prior

medical reports."  McConnell v. Colvin, 2:12CV00005, 2013 WL 1197091, at *7 (W.D. Va.

Mar. 25, 2013) (quoting Davis v. Barnhart, 392 F.Supp.2d 747, 751 (W.D.Va. 2005)).

     The ALJ specifically cited the fact that Brown had received only conservative treatment

in two areas: (1) his assessment of Brown's subjective complaints and (2) his assessment of the

opinion of one of Brown's treating physicians, Dr. Laura Howard.  As to Brown's subjective

complaints, the ALJ found that, while Brown alleged that he suffers from debilitating neck and

back pain, "his treatment notes reveal that he has been treated primarily with pain medications

for these impairments and has not undergone any surgical intervention, physical therapy, or pain

management treatment with steroid injections."  R. 27.[5]  Dr. Broaddus did not conduct any

objective tests which indicated back pain; indeed, the straight leg test was negative bilaterally.

R. 347.  Dr. Broaddus deferred consideration of Brown's lumbar symptoms.  R. 438.  Thus, there

is nothing in Dr. Broaddus's opinion that is contradictory to the ALJ's assessment of Brown's

subjective back pain as Dr. Broaddus did not recommend any new treatment as to these

symptoms.

     As to Brown's neck pain, there is nothing contained in Dr. Broaddus's opinion that is

contradictory to, competes with, or calls into doubt the medical records presented to the ALJ.

---

[5] The ALJ also noted that Brown alleged debilitating knee pain, but that his treatment for it was
equally conservative as his treatment for neck and back pain.  R. 27.  The ALJ ultimately
concluded that Brown's knee pain was non-severe.  R. 25.  As Dr. Broaddus's opinion did not
address Brown's knee symptoms, his opinion is clearly not new and material evidence as to
Brown's knee pain.

Dr. Jane had diagnosed Brown with a C4-C5 disk bulge, R. 349, 369, and stated on September 9, 2009, that he would "at least consider surgery," but would first have a trial run of steroid injections.  R. 341, 359.  Dr. Broaddus specifically noted that Brown had attempted steroid injections, but was unable to receive them due to his blood pressure and cardiac problems.  R. 436.  Thus, there is no conflict between Dr. Jane's opinion and Dr. Broaddus's opinion.  The opinions of Dr. Jane and the later opinion of Dr. Broaddus merely reflect the typical progression of medical treatment—attempting more conservative treatment options before progressing to the consideration of more invasive treatment.  The approximate year and a half time gap between the opinions of Drs. Jane and Broaddus bolsters this conclusion.

The ALJ also considered the opinion of Dr. Laura Howard, Brown's treating physician.  Dr. Howard found that Brown's ability to lift/carrying and to stand/walk were affected by his impairments, that Brown could never crawl, push/pull, handle (gross manipulation), finger (find manipulation), or feel (skin receptors), and that Brown's condition would be expected to cause significant pain resulting in interruption of activities and/or concentration and require unpredictable and/or lengthy period of rest during the day.  R. 338.  The ALJ afforded Dr. Howard's opinion minimal weight because it was inconsistent with her own treatment notes.[6]  The ALJ also noted that Dr. Howard's opinion was "contradicted by the opinion of Dr. [John] Jane, [Brown's] neurosurgeon, who opined that the claimant's arm symptoms are particularly severe and recommended only conservative treatment for his back/hand pain/numbness."  R. 28.  Dr. Broaddus's opinion does not address the capacity of Brown to perform certain tasks or activities, and does not address any functional limitations caused by back/hand pain/numbness.

---

[6] Brown does not directly challenge the weight assigned to Dr. Howard's opinion.

This case is distinguishable from cases Brown relies upon in which the evidence presented to the Appeals Council provided a reasonable possibility of a different outcome. In Farley v. Astrue, 7:11CV00263, 2012 WL 1108706 (W.D. Va. Mar. 30, 2012), the medical record before the ALJ included an opinion from the claimant's physician that indicated her mental impairments were primarily related to emotional dysfunction. The evidence submitted to the Appeals Council, however, included both a report from another doctor indicating the claimant was seemingly experiencing significant psychiatric issues and information from psychiatrists who had treated the claimant during periods of hospitalization and indicated that her emotional issues had persisted over a period of several years. Id. at *3. Citing Meyer, the court remanded the case so a fact finder could determine if "nonexertional problems identified by the mental health specialists only weeks after the Administrative Law Judge's decision were so severe as to affect [the claimant's] capacity for work during the period of time adjudicated." Id. at *5 (citing 662 F.3d 700, 707 (4th Cir. 2011)).

In Tanner v. Astrue, 5:10CV084, 2012 WL 1069161 (W.D. Va. Mar. 29, 2012), the evidence submitted to the Appeals Council included a consultative mental evaluation. Disability Determination Services had specifically referred the claimant for a mental status evaluation to assist in determining eligibility for Social Security Disability Benefits. No other such consultative exam appeared in the record. Id. at *6. Unlike these cases, the ALJ here was not denied the benefit of new evidence that was either directly contradictory to, or relating to a medical problem not addressed by, the medical record at the administrative hearing.

In Ridings v. Apfel, 76 F. Supp. 2d 707, 710 (W.D. Va. 1999), the new evidence submitted to the Appeals Council included a doctor's report that "show[ed] a dramatically different picture" from the medical record presented to the ALJ. Id. The ALJ, based on the

findings of the claimant's treating physician, found the claimant suffered only a lumbar stain without any evidence of neurological involvement and had no impairment that significantly limited his ability to perform basic work-related activities. The new evidence, however, included an MRI in which a different doctor's found a disc herniation with fragmentation to the left side with impinging nerve on S1. The doctor further advised the claimant not to engage in any activities like bending forward, pushing, pulling or lifting. Id. In short, the new evidence contained significantly more severe objective findings and a much more restrictive medical opinion regarding the claimant's ability to perform work related activities. Thus, the new evidence "call[ed] into doubt any decision grounded on the prior medical reports" of the claimant's treating physician. In contrast, the new evidence which Brown has presented to the Appeals Council does not contain any opinion or findings of a more severe medical condition or more restrictive limitation on Brown's activities.

In sum, the opinion of Dr. Broaddus submitted to the Appeals Council does not impugn the potions of the record upon which the ALJ rested his decision. I find that the evidence is not contradictory, does not present material competing testimony, and does not call into doubt any decision grounded in the prior medical reports. As such, there is no reasonable possibility that the ALJ's decision would be changed upon consideration of this evidence. I therefore must find that the the evidence presented to the Appeals Council fails the materiality prong of the Wilkins inquiry and does not warrant remand.

**Residual Function Capacity**

Brown asserts that the ALJ's "RFC finding directly violates SSR 96-8p in that the finding failed to 'first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis' before expressing the RFC 'in terms of the

exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Pl.'s Br. 11. The ALJ did not, however, simply state his ultimate finding and re-state the definition of light work. Instead, the ALJ's opinion discusses at some length both the process the ALJ used in making his RFC finding and the medical evidence of record. R. 26-28. Critically, as part of this discussion of the medical record, the ALJ expressly "agreed with and adopted" the opinions of the state agency physicians. R. 28. In doing so, he adopted the state agency function-by-function analysis as part of his determination of the Plaintiff's RFC for light work. See R. 315-21. Dr. A. Martin Cader, the state agency physician, expressly found that Brown could lift and/or carry ten pounds both occasionally and frequently, stand and/or walk (with normal breaks) about six hours in a normal eight hour workday, sit (with normal breaks) for about six hours in an eight hour workday, and could push and/or pull, climb, balance, stoop, kneel, crouch, reach in all directions, handle, finger, and feel without any additional limitations. R. 316-17. The ALJ's only departure from the state agency assessment was as to Brown's mental RFC—the ALJ included the additional limitation of simple, unskilled work in light of Brown's testimony that he was in special education. R. 28, 51.

The ALJ reviewed the medical record as a whole and did not err in adopting the function-by-function analysis of Dr. Cader. As such, I find that the ALJ properly considered Brown's functional limitations and restrictions in crafting his RFC.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: July 25, 2013

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge