# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| THOMAS F. BROWN,  *Plaintiff,*  v.  COMMISSIONER OF SOCIAL SECURITY,  *Defendant.* | CIVIL ACTION NO. 6:12-CV-00009  MEMORANDUM OPINION  JUDGE NORMAN K. MOON |

This matter is before me on consideration of the following: the parties' cross-motions for summary judgment (docket nos. 13 and 20); the Report and Recommendation ("Report") of United States Magistrate Judge Robert S. Ballou (docket no. 24); Plaintiff's objections (docket no. 25) to the Report; and the response (docket no. 26) to Plaintiff's objections, filed by the Commissioner of Social Security ("Defendant," or the "Commissioner").[1]

In his Report, the magistrate judge recommends that I affirm the Commissioner's final decision denying Plaintiff's claims for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Plaintiff timely filed objections to the Report, obligating the court to undertake a *de novo* review of those portions of the Report to which proper objections were lodged. 28 U.S.C. § 636(b); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). Having conducted such a review, I find that the objections are without merit and that the magistrate judge was correct in finding that the Commissioner's final decision is supported by substantial

---

[1] When the instant complaint was filed, Michael J. Astrue was the Commissioner of Social Security. On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

evidence and that Plaintiff did not meet his burden of establishing that he was disabled under the Act. In particular, my review of the record confirms that a remand to the administrative law judge ("ALJ") for further review of evidence that Plaintiff submitted to the Appeals Counsel well over a year after the ALJ's decision is not warranted. Accordingly, for the reasons stated herein, I will overrule Plaintiff's objections and will adopt the magistrate judge's Report *in toto*.

## I.

The Commissioner's factual findings must be upheld if they are supported by substantial evidence and were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is responsible for evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545. Any conflicts in the evidence are to be resolved by the Commissioner (or his designate, the ALJ), not the courts, and it is immaterial whether the evidence will permit a conclusion inconsistent with that of the ALJ. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The court may not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the court may only consider whether the ALJ's finding that Plaintiff is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law. *Craig*, 76 F.3d at 589. However, determining whether the evidence presented by the ALJ to support his decision amounts to substantial evidence is a question of law, and therefore will be considered anew. *Hicks v. Heckler*, 756 F.2d 1022, 1024-25 (4th Cir. 1985) (*abrogated on other grounds by Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988). Furthermore, "ALJs have a duty to analyze 'all of the relevant evidence' and to provide a sufficient explanation for their 'rationale in crediting certain evidence.'" *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (citations omitted).

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's ruling to the district court within fourteen days of the order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b). The district court conducts a *de novo* review of those portions of a magistrate's report and recommendation to which specific objections were made. Fed. R. Civ. P. 72(b)(3); *Orpiano*, 687 F.2d at 48. General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object. *Veney v. Astrue*, 539 F. Supp. 2d 841, 845 (2008). Those portions of the magistrate judge's report and recommendation to which no objection are made will be upheld unless they are clearly erroneous or contrary to law. *See Orpiano*, 687 F.2d at 47 (citing *Webb v. Califano*, 468 F. Supp. 825, 830 (E.D. Cal.1979)). The district court may accept, reject, or modify the recommended disposition based on its *de novo* review of the recommendation and the objections made. Fed. R. Civ. P. 72(b)(3).

## II.

### *A*.

The magistrate judge's Report provides the following "Social and Vocational History" for Plaintiff:

> [Plaintiff] was born March 16, 1962. R. 41. He completed high school, took special education classes, and reports that he is limited in his reading ability. R. 51. [Plaintiff] has worked as a lumber stacker, which is classified as unskilled heavy work, and as an automobile mechanic.[2] R 55. He stopped working in 1999. R. 49. In a function report dated March 5, 2009, [Plaintiff] described his daily activities as doing errands or doing work in the house. R. 173. He further reported that he took care of his children (he reported living with his son), did light cleaning about an hour every other day, shopped for groceries once a week, watched television for several hours daily, talked with others daily, and attended church regularly. R. 174-79.

Additionally, the magistrate judge's Report includes a "Claim History," which states that Plaintiff

> filed his claim for SSI on November 28, 2008. R. 125. He initially claimed a disability onset date of September 1, 2003. R. 125. The Commissioner denied [Plaintiff's] application initially and upon reconsideration. R. 61-65, 69-70. [The ALJ] held a hearing on March 5, 2010, at which [Plaintiff], represented by counsel, and a vocational expert testified. R. 36-58. At the hearing, [Plaintiff] amended his alleged onset date to January 20, 2009. R. 38. The ALJ issued his decision denying [Plaintiff's] claim on June 7, 2010. R. 22-30. The ALJ found that [Plaintiff] suffered from the severe impairments of cervical degenerative disc disease, status post a C5-C7 cervical decompression and fusion in 2005, hypertension, and myofascial pain, along with a non-severe knee impairment. R. 24, 25. The ALJ found that none of these impairments, either individually or in combination, met or medically equal a listed impairment. R. 25. The ALJ further found that [Plaintiff] has retained an RFC ["residual functional capacity"] to perform simple, light work. R. 26. The ALJ found that [Plaintiff] is unable to perform any past relevant work, but that there are jobs, which exist in significant numbers in the national economy, which [Plaintiff] can perform, given his age, education, work experience, and RFC. R. 28-29. As such, the ALJ concluded that [Plaintiff] is not disabled. R. 29.

---

[2] The Report notes that "[w]ork as an automobile mechanic, as customarily performed, is classified as skilled and medium level work. However, the Vocation Expert noted that [Plaintiff's] skills had likely been negated by time due to the technological development of automobiles since the claimant had last worked as a mechanic. R. 55."

[Plaintiff] filed an appeal with the Social Security Administration's Appeals Council and included four additional exhibits in his request of review. On December 20, 2011 the Appeals Council denied [Plaintiff's] request for a review of the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1-4. On August 30, 2011, [Plaintiff] filed his complaint in this court seeking judicial review of the ALJ's decision . . . .

The Report includes the following summary regarding "Evidence Submitted to Appeals Council" (italicized emphasis added):

[Plaintiff] seeks a remand based upon the recommendation of his neurosurgeon, Dr. William Broaddus, that he is a candidate for a cervical fusion at the C4-5 level. Dr. Broaddus, after seeing [Plaintiff] only once, stated that [Plaintiff] had a [broad] based disc bulge at C4-C5 and that a fusion at that level could provide significant improvement of his symptoms. [Plaintiff] obtained this opinion following the ALJ's decision and presented it for the first time to the Appeals Council. [Plaintiff] contends that the opinion is new and material evidence sufficient to warrant a remand. I find that the opinion is neither new nor material and thus does not warrant remand.

[Plaintiff's] primary medical issue relates to pain resulting from problems with his cervical spine. [Plaintiff] suffered from cervical stenosis and in 2005 underwent surgical decompression and fusion at C5 through C6 and C7 in 2005. See R. 226, 304, 305, 313-14 (noting [Plaintiff's] surgical history). [Plaintiff] continued to have neck pain, and in February 2009, he saw Dr. Laura Howard of Central Virginia Community Health Center for neck and lumbar pain. Dr. Howard prescribed medication for this continued pain. A CT myelogram on February 13, 2009 revealed that [Plaintiff] had neuroforaminal narrowing at C3-C4, C4-C5, and C5-C6. R. 371.

[Plaintiff] had a cervical MRI on July 30, 2009, which revealed that he had persistent moderate narrowing of the spinal canal at C4-C5 due to a broad-based disc bulge. R. 349, 369. [Plaintiff] saw Dr. John Jane, a neurosurgeon at the University of Virginia, on September 9, 2009, who found that [Plaintiff] had myelomacial in his spinal cord (softening of the cord). Dr. Jane noted that he would "at least consider surgery," if [Plaintiff] had severe nerve compression symptoms in his arm, *but only after a trial run of steroid injections*. R. 341, 359. Throughout the fall of 2009, the University of Virginia Medical Center attempted to contact [Plaintiff] to discuss his medical condition and to schedule a follow up appointment. R. 354, 356, 358.[3] When [Plaintiff] appeared before the ALJ on March 5, 2010, *he had received only*

---

[3] The Report notes that "[i]t appears that [Plaintiff] was incarcerated in October, 2009, which may account for some of the difficulty in contacting him during this period. R. 355."

*conservative treatment—no pain management and no steroid injections. Based in part on this conservative treatment*, the ALJ found that [Plaintiff's] complaints and asserted impairments from his neck problems were not as severe as claimed. R. 27, 28.

After the hearing before the ALJ, [Plaintiff] tried on several occasions to have the recommended epidural steroid injections, but these were cancelled each time due to high blood pressure issues. R. 395, 400, 401, 403. [Plaintiff] also had cardiac complications, having been seen in the Cardiovascular Clinic at UVA due to a history of syncope. R. 397-398. These intervening events prevented [Plaintiff] from obtaining the recommended epidural steroid injections. Then, on September 12, 2011, [Plaintiff] saw Dr. Broaddus, a neurosurgeon at Virginia Commonwealth University. R. 436-39. [Plaintiff] did not see Dr. Broaddus again.

[Plaintiff] submitted these records, including those of Dr. Broaddus, to [the] Appeals Council. Dr. Broaddus did not make any findings regarding [Plaintiff's] physical condition that were contradictory to Dr. Jane's, but did find that, given [Plaintiff's] severe symptoms, he would consider surgery as it could provide significant improvement. R. 438. The Appeals Council accepted this new evidence and made it part of the record, but found that it did not provide a basis for changing the ALJ's decision. R. 2.4.[4]

[Plaintiff] argues that Dr. Broaddus's opinion contradicts the ALJ's factual findings that [Plaintiff] had received only conservative medical treatment for his neck and back pain, and thus the finding that [Plaintiff] could significantly improve with surgery is new and material evidence which warrants remand. The Commissioner argues that the opinion of Dr. Broaddus does nothing more than confirm the evidence in the medical record presented to the ALJ. In particular, the Commissioner notes that Dr. Broaddus did not find that [Plaintiff] suffered from any medical condition not considered by the ALJ, nor did Dr. Broaddus find that [Plaintiff's] condition was more severe than the ALJ concluded it to be.

Premised with the remark that "[t]here is no dispute over the substance of Dr. Broaddus['s] opinion," the Report provides further discussion regarding that opinion:

---

[4] The Report noted that

[t]he Appeals Council did not elaborate on its reasoning beyond stating that the new evidence provided by [Plaintiff] did not provide a basis for changing the ALJ's decision. R. 2. The Appeals Council is not required to provide any substantive comment or otherwise explain its reasoning. *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011). Such an express analysis may well be helpful, but the lack of additional fact finding does not render judicial review of the Commissioner's decision impossible so long as the record provides an adequate explanation for the decision. *Id*. (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).

[Plaintiff] saw Dr. Broaddus for neck and low back pain. Dr. Broaddus reviewed [Plaintiff's] medical records and noted that [Plaintiff] had previously had an anterior diskectomy and fusion at C5 through C7. Dr. Broaddus further noted that the medical record showed that other medical issues, primarily [Plaintiff's] blood pressure and cardiac problems[,] prevented [Plaintiff] from receiving the recommended epidural steroid injections. R. 436. Dr. Broaddus observed that [Plaintiff] complained of significant pain in various locations, but that he provided scarce details about the frequency, intensity, and quality of his pain. On physical examination, Dr. Broaddus found that [Plaintiff] had a significant amount of difficulty raising his arms to chest level and keeping them there due to bilateral shoulder pain. He noted that [Plaintiff] had to be encouraged to give effort. A straight leg raise test was negative bilaterally, although [Plaintiff] complained of increased low back pain with straight leg raising. R. 437. [Plaintiff] performed lumbar flexion and extension movements "rather poorly" and complained of increased back pain with movement. R. 437-38. Dr. Broaddus also reviewed an MRI of [Plaintiff's] cervical spine taken in July 14, 2011. He found broad-based disk bulging at the C4-C5 level just above the fusion at C5-C7. He also noted significant foraminal stenosis on the left at C3-4. Dr. Broaddus diagnosed [Plaintiff] with significant degenerative disease at the C4-C5 level and concluded that "given [Plaintiff's] severe symptoms, he would be a candidate for extension of the fusion to C4-C5 anteriorly." Dr. Broaddus determined that he would focus on [Plaintiff's] cervical spine pathology and defer consideration of a workup of [Plaintiff's] lumbar systems. R. 438.

[Plaintiff] argues that Dr. Broaddus's opinion is evidence that is contrary to the ALJ's finding that [Plaintiff's] condition only required conservative treatment and, as such, it is material in that there is a reasonable possibility it would have changed the outcome of the decision. [Plaintiff] further asserts that because "the only evidence of record concerning the medical records and opinion of Dr. Broaddus, the expert treating neurosurgeon, is contained in the new evidence submitted to the Appeals Council," Pl.'s Supp. Br. 10, the evidence is new. Additionally, [Plaintiff] argues that because the Appeals Council accepted the new evidence but did not articulate its analysis, no fact finder has made any findings with respect to Dr. Broaddus's opinion, or attempted to reconcile his opinion with the other evidence of record. As such, [Plaintiff] asserts that the decision in [*Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011)], requires remand for the ALJ to assess Dr. Broaddus's opinion. Pl.'s Supp. Br. 10.

*B.*

As the magistrate judge observed, a claimant may submit "new and material evidence" to the Appeals Council. Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility that it would have changed the outcome of the Commissioner's decision.

*Meyer*, 662 F.3d at 704-05 (citing *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).

The magistrate judge found that Dr. Broaddus' opinion was "neither new nor material" and, thus, did not warrant remand.[5] However, assuming for purposes of his Report that Dr. Broaddus's opinion was "new," the magistrate judge determined that the evidence was not material as there was not a reasonable possibility that it would change the outcome of the Commissioner's decision. Citing *Meyer* and *Wilkins*, he observed that "[n]ew evidence . . . is only material if it creates a reasonable possibility that, upon review of the evidence, the Commissioner would change the *outcome* of his decision – that is, find the claimant disabled and award benefits."

Plaintiff's objections fail to identify any legal error in the Report. The magistrate judge properly concluded that remand is not warranted simply because the new evidence might change particular elements of the ALJ's decision. The critical inquiry is whether the conclusion itself could be changed.

Dr. Broaddus's opinion presents objective findings regarding Plaintiff's impairment that are no more severe than those found in the medical record presented to the ALJ. Dr. Broaddus did not identify a latent impairment that had not previously been identified, and his report did not suggest that Plaintiff's impairment was more severe than had already been established during the proceedings before the ALJ. Plaintiff's assertion that consideration of Dr. Broaddus' report "would have changed the outcome of the decision below" is purely speculative. The report does not identify a condition that the ALJ had not already considered. It does not suggest that Plaintiff's impairment

---

[5] The Appeals Council will consider additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision." *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) (quoting 20 C.F.R. § 404.970(b)). In this case, the magistrate judge observed that the Commissioner does not dispute that Dr. Broaddus's opinion relates to the relevant time period.

was more severe than that which the ALJ already concluded. Nor did Dr. Broaddus identify or describe any functional limitations beyond the RFC for light work that the ALJ had assessed.[6]

Similarly, the magistrate judge found no conflict between Dr. Broaddus's opinion and that of Dr. Jane, a physician who had treated Plaintiff earlier. As the magistrate judge remarked, "[t]he opinions of Dr. Jane and the later opinion of Dr. Broaddus merely reflect the typical progression of medical treatment – attempting more conservative treatment options before progressing to the consideration of more invasive treatment." The magistrate judge added that "[t]he approximate year and a half time gap between the opinions of Drs. Jane and Broaddus bolsters this conclusion."

Plaintiff's objections recite a number of incidental differences in the wording of the various medical reports, but there is no merit to Plaintiff's assertion of "clear and significant differences" between the evidence before the ALJ and the evidence submitted to the Appeals Council. Indeed, the thrust of Dr. Broaddus's opinion is that, since the more conservative treatment had been tried, it had become time to consider surgical intervention. But that new information regarding the course of treatment does not disturb the findings that Plaintiff's impairments did not prevent him from performing the unskilled, light-duty jobs the vocational expert had identified.

The magistrate judge properly concluded that "the opinion of Dr. Broaddus submitted to the Appeals Council does not impugn the portions of the record upon which the ALJ rested his decision." Plaintiff may disagree with the magistrate judge's opinion that there is no significant conflict between Dr. Broaddus's opinion and the earlier medical findings, but an objective review

---

[6] Plaintiff also challenged the soundness of the ALJ's assessment of Plaintiff's residual functional capacity (RFC) for light work. The magistrate judge found no merit to Plaintiff's arguments that the RFC assessment was deficient, and Plaintiff apparently does not challenge that portion of the Report.

discloses just that.[7] The evidence presented to the Appeals Council did not meet the *Meyer* and *Wilkins* standard for materiality.

### III.

Having undertaken a *de novo* review of the Report, I find that Plaintiff's objections are without merit. My review of the record indicates that the magistrate judge was correct in finding that the Commissioner's final decision is supported by substantial evidence, that Plaintiff did not meet his burden of establishing that he was disabled under the Act, and that remand to the ALJ for review of additional evidence is not warranted. Accordingly, I will enter an order overruling Plaintiff's objections, adopting the magistrate judge's Report *in toto*, granting the Commissioner's motion for summary judgment, denying Plaintiff's motion for summary judgment, and dismissing this action and striking it from the active docket of the court.

Entered this __22nd__ day of August, 2013.

                                                    NORMAN K. MOON
                                                    UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff's objections essentially ask me to re-weigh the evidence, but that is beyond the scope of the court's review. *See Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1990); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).